IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEFFREY DOUP,

        Petitioner,

   v.                          Case No. 2:04-cv-474

                                   JUDGE FROST
                                   MAGISTRATE JUDGE KEMP

PAT HURLEY, Warden,

        Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties.

### I. PROCEDURAL HISTORY

Petitioner was indicted by the 2001 term of the Knox County grand jury on rape, in violation of O.R.C. §2907.02(A)(2), sexual battery, in violation of O.R.C. §2907.03(A)(5), and intimidation, in violation of O.R.C. §2921.04(B), with a firearm specification. Exhibit A to Return of Writ. While represented by counsel, petitioner proceeded to jury trial; however, on November 16, 2001, a mistrial was declared. Exhibit C to Return of Writ. On January 22, 2002, petitioner again proceeded to jury trial. He was found guilty of rape, intimidation, and sexual battery, and not guilty of the firearm specification. Exhibit D to Return of Writ. On February 8, 2002, petitioner was sentenced to an aggregate term of fifteen years incarceration. Exhibit E to Return of Writ. Represented by the Ohio Public Defender as new counsel, petitioner filed a timely appeal of his

convictions to the Fifth District Court of Appeals.  He asserted the following assignments of error:

> 1.  The State brought duplicitous rape and sexual battery charges against Mr. Doup, violating his rights to a fair trial, due process and jury unanimity, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> 2.  The trial court erroneously admitted inadmissible hearsay testimony, denying Mr. Doup the right to a fair trial and due process of law guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

> 3.  The trial court erred by admitting inadmissible "prior acts" testimony against Mr. Doup, in violation of Mr. Doup's right to a fair trial and due process of law guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

> 4.  The trial court erred by refusing to provide an instruction limiting the scope of the "prior acts" testimony at the time Mr. Doup's trial counsel requested one, in violation of Mr. Doup's rights to a fair trial and due process as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> 5.  The trial court erroneously prohibited Mr. Doup from introducing exculpatory evidence in violation of his due process rights under the Fourteenth Amendment to the United States Constitution.

> 6.  The State erroneously commented on Mr. Doup's decision not to testify, in violation of the Fifth Amendment of the United States Constitution.

> 7.  The trial court failed to comply with the felony sentencing statute when ordering Mr. Doup to serve consecutive sentences, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

> 8.  The double jeopardy clause of the Fifth Amendment prohibited the State from re-prosecuting Mr. Doup because Mr. Doup's trial counsel's consent to a mistrial of the November 2001 trial thwarted the principles of double jeopardy and because "manifest necessity" did not exist to support the mistrial.

> 9.  Mr. Doup received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

2

Exhibit F to Return of Writ.  On December 16, 2002, the appellate court affirmed the judgment of the trial court.  Exhibit I to Return of Writ.  Still represented by the public defender, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  He asserted the following propositions of law:

> 1.  A duplicitous indictment prejudices a defendant by preventing the jury from convicting on one allegation and acquitting on another, failing to give proper notice of the charges, and prohibiting the trial court from properly imposing a sentence.
>
> 2.  A victim's statements in a recorded conversation with the accused in [sic] inadmissible hearsay.
>
> 3.  Out-of-court statements are not admissible under Evid.R. 801(D)(1)(b) when the defendant makes no charge of "recent fabrication," making no prior consistent statement in existence.
>
> 4.  Out-of-court statements are not admissible under the Evid.R. 803(4) medical diagnosis or treatment exception to the hearsay rule when the declarations are not initially made for purposes of treatment or diagnosis, and are ultimately made to medical personnel by a third party.
>
> 5.  Physical and verbal abuse occurring years before sexual abuse, and independent of the sexual abuse, are inadmissible under Evid.R. 403(A) and 404(B).
>
> 6.  Evid.R. 105 requires a trial court to give a limiting instruction at the time of request, rather than delay the instruction for the general charge.
>
> 7.  The State may not comment on a defendant's decision not to testify under the guise of rebutting challenges to a victims credibility.
>
> 8.  A trial court must provide operative facts specifically explaining its findings for imposing consecutive sentences.
>
> 9.  The Fifth Amendment Double Jeopardy Clause is implicated when trial counsel consents to a mistrial outside the defendant's presence, and when a mistrial is declared without exploring viable alternatives.

3

> 10.  A defendant is deprived of effective assistance of counsel when trial counsel consents to a mistrial outside a defendant's presence, fails to request a jury unanimity instruction on a duplicitous indictment, and fails to object to or impeach expert witnesses providing inadmissible hearsay, and inconsistent testimony.

Exhibit J to Return of Writ.  On April 2, 2003, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Exhibit L to Return of Writ.

On June 3, 2004, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  The State brought duplicitous rape and sexual battery charges against Mr. Doup, violating his right to a fair trial, due process, and jury unanimity, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments.
>
> 2.  The double jeopardy clause of the Fifth Amendment prohibited the State from re-prosecuting Mr. Doup because his trial counsel's consent to a mistrial of the November 2001 trial thwarted the principles of double jeopardy and because "manifest necessity" did not exist to support the mistrial.
>
> 3.  Petitioner was denied effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

It is the position of the respondent that all of petitioner's claims are without merit.

## II.  CLAIM ONE

In claim one, petitioner asserts that he was denied due process due to a duplicitous indictment.  Petitioner argues that the indictment was duplicitous and denied him due process because several rape offenses and several sexual battery offenses were each charged in a single count of the indictment.

4

The state appellate court rejected this claim as follows:

> Appellant claims the state's action in initiating duplicitous rape and sexual battery charges violated his right to a fair trial, due process and jury unanimity. We disagree.
>
> On October 16, 2001, appellant filed motions to dismiss based upon insufficient notice of "what allegations are subject to the counts." Appellant's Brief at 3. By judgment entries filed October 26, 2001, the trial court denied the motions and ordered a more specific bill of particulars. As a result, appellant argues he defended his case "against the fatalistic backdrop the jury could convict him for rape or sexual battery even though it disagrees on which allegation was proven beyond a reasonable doubt." Appellant's Brief at 8.
>
> We note despite the jury's verdict of guilty to both counts, the trial court merged the counts at sentencing and ran the sentences concurrent to each other. See, Judgment Entry filed February 11, 2002.
>
> The counts of the indictment at issue alleged the following:
>
> "First Count: on several occasions between the 1st day of June, 1998 and the 23 rd day of January, 2001, in the County of Knox, State of Ohio, JEFFREY A. DOUP, did commit RAPE, by engaging in sexual conduct with Chelsea Doup, the said JEFFREY A. DOUP having purposely compelled Chelsea Doup to submit by force or threat of force, A FELONY OF THE FIRST DEGREE, contrary to and in violation of Section 2907.02(A)(2) of the Revised Code of Ohio, and contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Ohio.
>
> "Second Count: on several occasions between the 1st day of June, 1998 and the 23rd day of January, 2001, in the County of Knox, State of Ohio, JEFFREY A. DOUP, did commit SEXUAL BATTERY, by engaging in sexual conduct with Chelsea Doup, not the spouse of JEFFREY A. DOUP, the said JEFFREY A. DOUP being the natural parent of Chelsea Doup, A FELONY OF THE THIRD DEGREE, contrary to and in violation of Section 2907.03(A)(5) of the Revised Code of Ohio, and contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Ohio."
>
> Both counts charged sexual conduct. The rape count charged sexual

conduct by force or threat of force pursuant to R.C. 2907.02(A)(2). The sexual battery count charged sexual conduct with the offender being the natural parent of the victim pursuant to R.C. 2907.03(A)(5).

A second amended bill of particulars was filed on October 29, 2001, stating the following:

"First Count: on several occasions between the 1st day of June, 1998 and the 17th day of January, 2001, in the County of Knox, State of Ohio, while at the residence located at 18581 Divelbiss Road, Fredericktown, JEFFREY A. DOUP, did commit RAPE, by engaging in sexual conduct, to wit: vaginal intercourse and/or fellatio, with Chelsea Doup, the said JEFFREY A. DOUP having purposely compelled Chelsea Doup to submit by force or threat of force, A FELONY OF THE FIRST DEGREE, contrary to and in violation of Section 2907.02(A)(2) of the Revised Code of Ohio, and contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Ohio.

"MORE SPECIFIC BILL OF PARTICULARS: The sexual conduct occurred for the first time in the summer of 1998, and ended on or about the 14th, 15th or 16th of January 2001. The sexual conduct occurred when the said JEFFREY A. DOUP was alone with Chelsea Doup. The sexual acts occurred either in the bedroom of the said JEFFREY A. DOUP, or the bedroom of Chelsea Doup, or in the kitchen. The first series of sexual acts, approximately five or six times, consisted of fellatio. Vaginal intercourse occurred approximately three times.

"Second Count: on several occasions between the 1st day of June, 1998 and the 17th day of January, 2001, in the County of Knox, State of Ohio, while at the residence located at 18581 Divelbiss Road, Fredericktown, JEFFREY A. DOUP, did commit SEXUAL BATTERY, by engaging in sexual conduct, to wit: vaginal intercourse and/or fellatio, with Chelsea Doup, not the spouse of JEFFREY A. DOUP, the said JEFFREY A. DOUP being the natural parent of Chelsea Doup, A FELONY OF THE THIRD DEGREE, contrary to and in violation of Section 2907.03(A)(5) of the Revised Code of Ohio, and contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Ohio."

The more specific bill of particulars under Count 2 was identical to the language in Count 1.

6

The indictment and second amended bill of particulars set forth a continuing course of conduct and reference the start and ending dates only.

It is undisputed appellant was the victim's natural father. T. at 203. The victim testified to the initiating of the sexual conduct by appellant. T. at 259, 261. It began with fellatio with appellant forcing it upon the victim. T. at 261-262, 265. At the time, the victim was twelve years old and sexually naive. T. at 263-264. Thereafter, appellant made the victim engage in oral sex five or six more times over a two year time span. T. at 267-268, 271-272. At some point, the victim acquiesced to avoid confrontation. T. at 273-274. Vaginal intercourse began about one year later and it was the victim's first experience. T. at 276-277, 281. During the incident, appellant pulled off the victim's clothing, pinned her down, "stuck" his penis inside her and then threatened her. T. at 279-282. A second incident of vaginal intercourse occurred in the summer of 2000. T. at 283. Again, appellant "put his penis" inside the victim's vagina, hit her and threatened her. T. at 284-285. The last incident of vaginal intercourse occurred in January of 2001. T. at 286. During this incident, appellant threatened the victim with a gun. T. at 290-293. The victim testified to a physically abusive home life prior to the sexual assault.  T. at 218-221, 275. She maintained each incident of sexual conduct was done with violence and/or threats. T. at 261-262, 273-274, 276, 282, 284-285, 288- 289. The victim testified to being scared during each of the incidents because "I didn't know what was going to happen next." T. at 285.

Because the issue of credibility is for the trier of fact to determine, *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, *certiorari denied* (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183, it is logical the victim's acquiescence to oral sex could be perceived as sexual battery as opposed to rape.

Appellant argues it is uncertain which allegations led to appellant's convictions and whether the jury was unanimous on the different offenses. We fail to find the manner of indicting in this case led to an unfair trial given the evidence of numerous incidents of sexual conduct and the fact that the trial court merged the counts for sentencing.

Duplicity resulting in a lack of a fair trial is predicated on "whether a conviction rests on only one of the offenses or both." *Appellee's*

7

> *Brief at* 10, citing *United States v. Adesida* (C.A.6, 1998), 129 F.3d
> 846, 849. Therefore, the issue *sub judice* is whether the credible
> evidence led the jury to convict on one or both offenses. We find the
> answer to be in the negative. From our review of the evidence, the
> incidents of oral sex engaged in between appellant and the victim
> may very well have been without force given the victim's
> acquiescence to the sexual abuse.
>
> Upon review we find no violations of appellant's right to a fair trial
> and due process.

Exhibit I to Return of Writ.

The factual findings of the state court are entitled to a presumption of correctness pursuant

to 28 U.S.C. §2254(e):

> (1) In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.  The applicant shall have the burden of
> rebutting the presumption of correctness by clear and convincing
> evidence.

Further, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to

clearly established federal law or was based on an unreasonable determination of the facts of record:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. §2254(d).

Under the "contrary to" clause, a federal habeas court may grant the

> writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet this standard here.

As noted by the state appellate court, the first count of the indictment against petitioner charged him with raping his daughter by force or threat of force "on several occasions between the 1ˢᵗ day of June, 1998 and the 23ʳᵈ day of January, 2001." Exhibit A to Return of Writ. Similarly, the second count of the indictment charged petitioner with committing sexual battery against his daughter "on several occasions between the 1ˢᵗ day of June, 1998 and the 23ʳᵈ day of January, 2001." *Id.* These charges, petitioner appears to assert, would have been properly presented in an indictment charging him with several counts of rape and sexual battery, rather than solely two violations of such offenses.

> A duplicitous indictment is one that charges separate offenses in a single count. The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both. Adverse effects on a defendant may include ... the danger that a conviction will result from a less than unanimous verdict as to each separate offense.

*United States v. Adesida*, 129 F.3d 846, 849 (6ᵗʰ Cir. 1998), citing *United States v. Duncan*, 850 F.2d 1104, 1108 n.4 (6ᵗʰ Cir. 1988); *see also United States v. Campbell*, 279 F.3d 392, 397-98 (6ᵗʰ Cir. 2002)(citations omitted).

> Duplicitous charges, however, are not necessarily fatal to an indictment. *See Robinson*, 651 F.2d at 1194. A defendant may move, ... to require the government to "elect either the count or the charge

9

> within the count upon which it will rely," or the court may
> "particulariz[e] the distinct offense charged in each count" in its jury
> instruction. *Id.* Moreover, a specific unanimity instruction is
> generally not required unless: "1) a count is extremely complex; 2)
> there is variance between the indictment and the proof at trial; or 3)
> there is a tangible risk of jury confusion." *United States v. Sanderson*,
> 966 F.2d 184, 187 (6th Cir.1992).

*United States v. Shumpert Hood*, 210 F.3d 662-63 (6th Cir. 2000); *see also United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981).  The record before this Court does not reflect that petitioner made either of the foregoing requests.  In *United States v. Cherif*, 943 F.2d 692, 701 (7th Cir. 1991), the United States Court of Appeals for the Seventh Circuit refused to consider a claim of a duplicitous indictment where the defendant had failed to request any jury instruction to remedy the issue.  Further, in *United States v. Washington*, 127 F.3d 510, 513 (6th Cir. 1997), the United States Court of Appeals for the Sixth Circuit rejected a claim that the indictment was improperly duplicitous where the defendant was charged with possession with intent to distribute crack cocaine, and at trial the government offered proof of two different transactions that could have established the crime.  These cases are similar to the scenario presented here.

> The mere existence... of multiple theories of liability or multiple
> factual predicates for violation of a statute does not render the
> indictment duplicitous. *See United States v. Hixon,* 987 F.2d 1261,
> 1265 (6th Cir.1993) (an indictment under statute which subjects
> several alternative acts to the same punishment may charge any or all
> acts conjunctively without duplicity, and government need only
> prove violation of one of the alleged acts to prove violation of the
> statute); *United States v. Dean,* 969 F.2d 187, 195 (6th Cir.1992)
> (principal liability and liability for aiding and abetting charged in
> same count does not render count duplicitous; acts proscribed by
> statute, stated in disjunctive, may be charged in the conjunctive in the
> indictment). Count II of the indictment charged only one offense,
> possession with intent to distribute cocaine in violation of 18 U.S.C.
> § 841(a)(1). The government's presentation of multiple factual
> scenarios to prove that offense does not render the count
> duplicitous....

*Id.,* at 314. In *United States v. Washington, supra*, the Sixth Circuit further held that the District

Court was not required to issue a special jury instruction on unanimity since the defendant had failed

to make any such request. *Id.*

> The record in this case reflects that the trial court instructed the jury as follows:

>> The defendant is charged with rape. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on several occasions between the 1st day of June, 1998, and the 17th day of January, 2001, and in Knox County, Ohio, the defendant engaged in sexual conduct with another, and the defendant purposely compelled the other person to submit by force or threat of force.

>> ***

>> The defendant is charged with sexual battery. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on several occasions between the 1st day of June, 1998, and the 17th day of January, 2001, and in Knox County, Ohio, the defendant engaged in sexual conduct with another who was not the spouse of the defendant, and the defendant was the other person's natural parent.

*Transcript*, at 683-685. Thus, the record reflects that the jury was instructed it must find petitioner

had committed rape, and sexual battery, *on several occasions* between June 1, 1998, and January

17, 2001, before it could find him guilty of either charge. *Id.* In view of the foregoing, this Court

is not persuaded that petitioner was denied a fair trial due to a duplicitous indictment.

> Likewise, the record fails to reflect that petitioner was unconstitutionally denied adequate

notice of the charges against him.

>> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). It is generally sufficient that an indictment set forth

> the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.' *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882). 'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' *United States v. Hess*, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888).

*Hamling v. United States,* 418 U.S. 87, 117-118 (1974).  The charging document and bill of particulars (not a part of the record before this Court) sufficiently apprised petitioner of the charges against him.  The fact that the indictment did not indicate a specific date that the alleged offenses took place, and instead indicated a time span during which the alleged offenses took place, does not render the charging document constitutionally invalid.

> [F]airly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements. *See Isaac v. Grider,* 2000 WL 571959 at *5 (four months); *Madden v. Tate,* 1987 WL 44909, at *1-*3 (6th Cir.1987) (six months); *see also Fawcett v. Bablitch,* 962 F.2d 617, 618-19 (7th Cir.1992) (six months); *Hunter v. New Mexico,* 916 F.2d 595, 600 (10th Cir.1990) (three years); *Parks v. Hargett,* 1999 WL 157431, at *4 (10th Cir.1999) (seventeen months). Certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved.

*Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005).  In *Valentine v. Konteh, supra,* the United States Court of Appeals for the Sixth Circuit reversed the defendant's multiple convictions on rape and felonious sexual penetration, where the charging document failed to differentiate allegations made in forty separate charges.  *Id.*, at 634-638 (citations omitted).  Such are not the circumstances here.

Claim one is without merit.

### III.  CLAIM TWO

In claim two, petitioner asserts that the Double Jeopardy Clause prohibited his re-trial after a mistrial previously had been declared on the same charges, and where there was no manifest necessity for the mistrial.  The state appellate court denied this claim as follows:

> Appellant claims the granting of a mistrial by the trial court and the subsequent retrial of the case violated his constitutional right not to be tried twice for the same offenses. We disagree.
>
> In *State v. Uskert,* 85 Ohio St.3d 593, 595, 709 N.E.2d 1200, 1999-Ohio-289, the Supreme Court of Ohio discussed double jeopardy as follows:
>
> "As this court recognized recently, 'the Double Jeopardy Clause of each Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.' *Gustafson* [*State v.* (1996) ], 76 Ohio St.3d at 432, 668 N.E.2d at 441, citing *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496."
>
> During deliberations in the first trial, a juror admitted to looking up the word "hymen" in a dictionary. November 16, 2001 T. at 4. [FN1] The trial court concluded this was a violation of the juror's oath. *Id.* at 6-7. After determining there was no "need to *voir dire* the rest of the jury panel," the trial court declared a mistrial. *Id.* at 7-8. Both counsel agreed:
>
> FN1. This was brought to the trial court's attention by a note from the jury foreman. November 16, 2001 T. at 3.
>
> "THE COURT: I--I don't think there is a need to voir dire the rest of the jury panel. I think it's a mistrial.
>
> "MR. WINTERS: I agree.
>
> "THE COURT: And do you want to put an objection to that on, John?

"MR. BAKER: No, Your Honor.

"MR. WINTERS: And who knows whether I wanted one or you wanted one or what the split was or anything. I don't think it makes any difference. And I will offer the opinion, I think a mistrial is a horrible result in this situation, but I don't see any way around it, and I'm sure my client is going to be extraordinarily disturbed, but I don't see any way around it.

"THE COURT: Well, he's memorized the definition that he looked up, and he's defined it as covering the opening, and I'm not sure that's what the testimony was, and I think that the definition he's picked up is in contradiction to what the testimony was, and--

"MR. WINTERS: The--I agree with that. I mean, he's got a layperson's Webster's Dictionary generic definition, which makes sense, but that's not what the expert testimony was. Exactly." *Id.* at 7-8.

Although appellant characterized the trial court's decision as its own, it appears in the record that all concurred; in fact, defense counsel spoke in favor of a mistrial. We find the mistrial was not a *sua sponte* motion by the trial court.

What complicates this matter is that all of this was done outside appellant's presence in violation of Crim.R. 43(A) which states "[t]he defendant shall be present at the arraignment and every stage of the trial* * *."

Appellant received a new trial and now claims the second trial violated double jeopardy. We disagree. The mistrial was not a *sua sponte* motion by the trial court therefore, jeopardy did not attach. Appellant received the benefit of the mistrial and was retried. Even if we were to conclude the procedures surrounding the mistrial violated Crim.R. 43(A), the only remedy would be a new trial. The remedy has already been afforded to appellant.

Exhibit I to Return of Writ.  Again, these findings are entitled to a presumption of correctness

pursuant to 28 U.S.C. §2254(d), (e).  Petitioner has failed to establish that the state appellate court's

14

decision is so unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor, supra.*

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the state through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

> The Double Jeopardy Clause... precludes the State from making " 'repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity.'" *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). It protects defendants in cases "in which a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused." *Gori v. United States,* 367 U.S. 364, 369, 81 S.Ct. 1523, 1526-27, 6 L.Ed.2d 901 (1961). It also protects the defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *accord Arizona v. Washington,* 434 U.S. 497, 503-04, 98 S.Ct. 824, 829-30, 54 L.Ed.2d 717 (1978); *Dinitz,* 424 U.S. at 606, 96 S.Ct. at 1079; *Jorn,* 400 U.S. at 484-85, 91 S.Ct. at 556-57.

*Harpster v. Ohio, supra,* 128 F.3d at 327. The Supreme Court explained the reasons underlying the Constitution's protection of a criminal defendant's right "to have his trial completed by a particular tribunal":

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before

15

> it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona v. Washington, supra,* 434 U.S. at 503-504.    However, "'reprosecution is generally permissible if the declaration came at the request or with the acquiescence of the defendant.'" *United States v. Gantley*, 172 F.3d 422, 427, quoting *United States Cameron*, 953 F.2d 240, 243 (6th Cir. 1992) (citing *United States v. Dinitz*, 424 U.S. 600 (1976)). Contrary to petitioner's allegations here, the prosecutor need not establish that there was a manifest necessity for the mistrial, where the defendant consented to the mistrial.  *See Harpster v. Ohio, supra*, 128 F.3d at 327-28, citing *Arizona v. Washington,* 434 U.S. at 505; *see also Glover v. McMackin*, 950 F.3d 1236, 1239 (6th Cir. 1991).

Petitioner argues that his retrial violated the Double Jeopardy Clause despite defense counsel's agreement to the mistrial, because his attorney failed to first consult with him before agreeing to the mistrial.  The United States Court of Appeals for the Sixth Circuit has rejected this argument.  *Watkins v. Kassulke*, 90 F.3d 138, 142-43 (6th Cir. 1996)(citations omitted).

> When faced with a trial occurrence that may be prejudicial to the defense, counsel must make some tough choices. Remaining silent, objecting, requesting a curative instruction, moving for a mistrial-- each may be a valid course of action, and the path ultimately chosen is best entrusted to the experience of counsel. We hold that where, as here, defense counsel consents as a matter of trial strategy to a mistrial, that consent binds the defendant and removes any bar to reprosecution, regardless of whether the defendant participates in the decision.

*Id.,* at 142; *see also United States v. Burke*, 257 F.3d 1321, 1324 (11th Cir. 2001).

Claim two is without merit.

## IV.  CLAIM THREE

16

In claim three, petitioner asserts that he was denied the effective assistance of counsel because his attorney agreed to a mistrial without consulting him first, because his attorney failed to request a special jury instruction regarding jury unanimity, and because his attorney failed to object to allegedly inadmissible and inconsistent statements by Gail Hornor, a pediatric nurse practitioner who examined the alleged victim. *Petition*, at 12.

The state appellate court denied this claim as follows:

> Appellant claims he was denied the effective assistance of counsel. We disagree.
>
> In order to establish ineffective assistance of counsel, appellant must demonstrate the following:
>
> "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
>
> "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus, *certiorari denied* (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768.
>
> Appellant argues his trial counsel was ineffective in failing to request a juror unanimity instruction, failing to object to and impeach Nurse Hornor's testimony and consenting to the mistrial of the first trial.
>
> ### UNANIMITY INSTRUCTION
>
> Defense counsel failed to request the unanimous jury instruction. Based upon our discussion of the duplicitous charges argument in Assignment of Error I, we find no proof that the outcome of the trial

17

would have been different had defense counsel requested such an instruction.

## NURSE HORNOR'S TESTIMONY

Appellant claims his trial counsel failed to object to Nurse Hornor's testimony regarding the stretching and tearing of an adolescent girl's hymen based upon "the literature." T. at 436-437. It would have been difficult for defense counsel to object to the reference of "the literature" since the testimony was elicited on cross-examination. Defense counsel did call "the literature" into doubt when he suggested to Nurse Hornor that "the literature" was not "terribly helpful for us in this particular case* * *unless we know that the same things that are alleged to have happened in this case happened to those girls in that literature." T. at 437.

Appellant also claims his trial counsel did not impeach Nurse Hornor's testimony concerning the stretching and tearing of the hymen. Nurse Hornor testified "80 to 90 percent" of girls reporting multiple penile penetration "have normal genital exams." T. at 437. During the first trial, Nurse Hornor testified "66 to 80 percent of girls who have had a penis in their vagina are going to have a normal genital exam." November 14, 2001 T. at 8. However, Nurse Hornor clarified the latter testimony by explaining "for girls who had reached puberty, those numbers are even higher because of the natural things that happen to the body when a girl reaches puberty." *Id.* at 439.

Lastly, appellant claims his trial counsel failed to object to Nurse Hornor's report which contained the statement "[t]wo-thirds of girls with substantiated cases of sexual abuse have normal or non-specific findings on exam* * *." State's Exhibit 4. Given that Nurse Hornor testified to "80 to 90 percent" of girls reporting multiple penile penetration "have normal genital exams," the "two-thirds" statement was actually beneficial to appellant.

We find no proof that the outcome of the trial would have been different had defense counsel objected to the complained of evidence.

## MISTRIAL

As we found in Assignment of Error VIII, defense counsel not only consented to the mistrial, but joined in the motion and decision. Even given our discussion of the procedural issue under Crim.R. 43(A), the

18

> remedy would be a new trial. A new trial was given. We find no prejudice has been shown nor proof that the outcome would have been different.

Exhibit I to Return of Writ. Again, petitioner has failed to establish that the decision of the state appellate court is so unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor, supra.*

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of

19

counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other.  *Strickland,* 466 U.S. at 697.

As previously discussed, counsel's decision to agree to a mistrial was one of trial strategy and that is entitled to deference.  Petitioner has failed to establish either that such decision was unreasonable, or that he was prejudiced thereby, under the test set forth in *Strickland*.

Additionally, in view of the jury instructions requiring the jury to find beyond a reasonable doubt that petitioner had "on several occasions between the 1st day of June, 1998, and the 17th day of January, 2001... engaged in sexual conduct" with his daughter, and that he " purposely compelled" her "to submit by force or threat of force," before it could find him guilty of rape or sexual battery, *Transcript,* at 683-685, petitioner has failed to establish that any prejudice from counsel's failure to request a special jury instruction on jury unanimity.  Petitioner's argument that such an instruction "was required because the jury demonstrated confusion about how it should deliberate on the sexual abuse counts," *Petition*, at 14, is unpersuasive.  The jury's questions concerned whether the rape and sexual battery charges involved "two counts of the same charge.*"* *Transcript,* at 705-706.  The jury's questions do not appear to reflect confusion regarding the acts required to establish such offenses.

Finally, for the reasons discussed by the state appellate court, this Court likewise concludes that petitioner has failed to establish the ineffective assistance of counsel under *Strickland* based upon his attorney's failure to object to or impeach Hornor.  The Court notes that Hornor had apparently documented her opinion that a normal genital exam did not refute allegations of sexual abuse in the initial report she prepared.  *Transcript*, at 438-441.  Counsel did attempt to cross examine Hornor regarding this issue.  *Id*., at 439-440.

20

Claim three is without merit.

**V.**

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

```
/s/ Terence P. Kemp
United States Magistrate Judge
```